CORTLIN H. LANNIN (SBN 266488)
clannin@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

HANNAH K. NELSON (SBN 347061)
hnelson@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc.*

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EVAN WOOTEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BIOLIFE PLASMA SERVICES L.P. and TAKEDA PHARMACEUTICALS U.S.A., INC.,<br><br>Defendants. | Civil Case No.: 1:25-cv-00099-KES-SKO<br><br>**DEFENDANTS BIOLIFE PLASMA SERVICES L.P. AND TAKEDA PHARMACEUTICALS U.S.A., INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Hearing Date: May 19, 2025<br>Hearing Time: 1:30 p.m.<br>Honorable Kirk E. Sherriff |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on May 19, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Kirk E. Sherriff, in Courtroom 6 of the United States District Court for the Eastern District of California, located at Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc., will and hereby do move for an order dismissing Plaintiff Evan Wooten's Complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

This motion is made following the conference of counsel pursuant to Section I.C of this Court's Standing Order, which took place on April 1, 2025 by videoconference. Counsel for the parties discussed thoroughly the substance of Defendants' contemplated motion, including each of the arguments for dismissal set out in this present motion, to determine whether they could reach any potential resolution. Despite their good faith efforts, counsel for the parties were unable to reach agreement on all issues, and Counsel for Plaintiff indicated that Plaintiff does not agree to the relief requested herein but intends to amend his Complaint. Counsel for Defendant offered to stipulate to the filing of an Amended Complaint to obviate the need for the instant motion, but Counsel for Plaintiff did not agree to so stipulate. Accordingly, the undersigned certifies that meet and confer efforts have been exhausted.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Christina M. AiChang ("AiChang Decl.") and accompanying exhibit, and such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

DATED: April 4, 2025

COVINGTON & BURLING LLP

By: <u>*/s/ Cortlin H. Lannin*</u>

Cortlin H. Lannin

*Attorney for Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc.*

## TABLE OF CONTENTS


MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

III. ARGUMENT .......... 5

A. This Court Lacks Personal Jurisdiction Over Defendants. .......... 5

B. The Complaint Fails To State a Viable Claim. .......... 7

1. Plaintiff Consented to the Alleged Data Practices. .......... 7

2. Plaintiff's Claims Are Untimely. .......... 9

3. Plaintiff Lacks Statutory Standing. .......... 10

4. Plaintiff Fails To Plead the Elements of His Claims. .......... 11

a) The CIPA Section 631 "Wiretap" Claim Should Be Dismissed... 11

b) The CIPA Section 638.51 "Pen Register" Claim Should Be Dismissed. .......... 13

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Augustine v. Great Wolf Resorts, Inc.*,
2024 WL 3450967 (S.D. Cal. July 18, 2024) ....12

*Aviles v. Liveramp, Inc.*,
2025 WL 487196 (Cal. Super. Jan. 28, 2025) ....14, 15

*BNSF Ry. Co. v. Tyrrell*,
581 U.S. 402 (2017) ....5

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ....5

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ....9

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ....11

*Carroll v. J.M. Smucker Co.*,
2023 WL 4053796 (N.D. Cal. June 15, 2023) ....6

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Sept. 9, 2024) ....14, 15

*Conohan v. Gen Digital Inc.*,
2025 WL 864655 (C.D. Cal. Feb. 19, 2025) ....6

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....11

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) ....8

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....13

*Fidrych v. Marriott Int'l, Inc.*,
952 F.3d 124 (4th Cir. 2020) ....6

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ....10

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ....3

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................5

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) ....................12

*Hasson v. FullStory, Inc.*,
114 F.4th 181 (3d Cir. 2024) ....................6

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) ....................6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................7

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....................9

*Javier v. Assurance IQ, LLC*,
2023 WL 3933070 (N.D. Cal. June 9, 2023) ....................10

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................9

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ....................9

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....................3

*Lau v. Gen Digital Inc.*,
2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ....................9

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ....................15

*Massie v. Gen. Motors Co.*,
2021 WL 2142728 (E.D. Cal. May 26, 2021) ....................6

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ....................11

*Ning Xianhua v. Oath Holdings, Inc.*,
536 F. Supp. 3d 535 (N.D. Cal. 2021) ....................10

*In re Packaged Seafood Prods. Antitrust Litig.*,
338 F. Supp. 3d 1118 (S.D. Cal. 2018) ....................5

*People v. Blair*,
25 Cal.3d 640 (1979) ....................................................................................................14

*People v. Franco*,
6 Cal. 5th 433 (2018) ....................................................................................................14

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................................................................8, 9

*Picot v. Weston*,
780 F.3d 1206 (9th Cir. 2015) ....................................................................................5, 6

*Ramos v. Gap, Inc.*,
2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) ...........................................................12

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) ....................................................................................7

*Rodriguez v. Fountain9, Inc.*,
2024 WL 3886811 (Cal. Super. July 9, 2024) ..............................................................10

*Rodriguez v. Fountain9, Inc.*,
2024 WL 4905217 (Cal. Super. Nov. 21, 2024)..............................................................11

*Rodriguez v. Plivo Inc.*,
2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ..........................................................15

*Sacco v. Mouseflow, Inc.*,
2022 WL 4663361 (E.D. Cal. Sept. 30, 2022)............................................................5, 6

*Sanchez v. Cars.com, Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) ..........................................................13, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..........................................................................................5

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................................................................8

*Svenson v. Google Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ..................................................................12

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ............................................................................8

*Tavernetti v. Superior Court*,
22 Cal. 3d 187 (1978) ....................................................................................................11

*Valenzuela v. The Kroger Co.*,
2025 WL 851075 (C.D. Cal. Mar. 13, 2025)....13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)....12

*Walden v. Fiore*,
571 U.S. 277 (2014)....6, 7

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989 (9th Cir. 2006)....9

*Williams v. DDR Media, LLC*,
--- F. Supp. 3d ----, 2024 WL 4859078 (N.D. Cal. Nov. 20, 2024)....13

*Wolf v. Travolta*,
2014 WL 6685560 (C.D. Cal. Nov. 24, 2014)....10

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)....12

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....12

**Statutes**

Cal. Civ. Code § 3515....7

Cal. Penal Code § 631.... *passim*

Cal. Penal Code § 637.2....10

Cal. Penal Code § 638.50....14

Cal. Penal Code § 638.51....7, 13

Cal. Penal Code § 638.52....14

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendant BioLife Plasma Services L.P. offers services that allow individuals to safely and responsibly donate plasma that Defendant Takeda Pharmaceuticals U.S.A., Inc. then uses to make more than 20 different types of medicine for people with a variety of rare conditions.[1] Prospective plasma donors can schedule appointments at donation centers all across the nation through the BioLife website (www.biolifeplasma.com). When prospective donors wish to schedule an appointment, they must first create a BioLife account and "agree that the information [they] provide[]" in creating an account "may be used in the donation process," in accordance with "the BioLife Privacy Notice." Compl. ¶ 36. BioLife's hyperlinked Privacy Notice, in turn, discloses that BioLife collects "Internet Protocol (IP) address" and "email," and that the information collected may be used to "manage and improve the Website and Application" and shared with "authorized service providers that perform certain services on [BioLife's] behalf, such as marketing." AiChang Decl. Ex. A at 1-2.

Plaintiff Evan Wooten is one such prospective donor who allegedly created an account on the BioLife website in February 2023. He alleges that BioLife implemented tools on its website made by Salesforce and Snapchat, and that those companies used those tools to collect certain information about user activities on the website in order to provide BioLife with data analytics and marketing services. Specifically, Plaintiff alleges that these tools captured his email and IP addresses without his consent, even though the Privacy Notice authorized BioLife to use those tools to collect the very information he now claims was "wiretapped" in violation of the California Invasion of Privacy Act ("CIPA"). For multiple reasons, Plaintiff's Complaint should be dismissed.

*First*, this Court lacks personal jurisdiction over BioLife. Plaintiff has not carried his burden to plead facts establishing that BioLife purposefully directed the allegedly tortious use of the challenged website tools at California, or that his claims arise out of or relate to any of BioLife's California-related activities.

[1] This brief hereafter refers to both Defendants collectively as "BioLife."

*Second*, Plaintiff fails to state either of his alternative claims under CIPA's wiretap and pen register provisions. Plaintiff's own allegations establish that he gave prior consent to the challenged data collection practices disclosed in BioLife's Privacy Notice. And even if Plaintiff had not consented—and he did—his claims are untimely, he does not allege an injury sufficient to confer statutory standing, and he fails to plead other elements of his claims. The Court should dismiss Plaintiff's Complaint in its entirety.

## II. BACKGROUND

***BioLife's Alleged Use of the Salesforce Evergage and Snapchat Pixel Tools.*** Salesforce and Snapchat each provide web-based "data analytics and marketing" services to help BioLife better reach individuals who may be interested in donating plasma used for life-changing therapy treatments. Compl. ¶ 2. In order to use these services, BioLife allegedly "installed" the Salesforce Evergage and Snapchat Pixel tools on the BioLife website (www.biolifeplasma.com), including on the webpage shown in the following screen excerpted in the Complaint, which reflects "step one of three" when "signing up for an account through the Website." *Id.* ¶¶ 2, 36.



First Name *

Last Name *

Email Address *

Zip Code *

* Indicates a required field

By providing my contact information, I agree that the information I provided may be used in the donation process. For more information on how BioLife processes my personal information I can go to the BioLife Privacy Notice.

To change my communication preferences I can log into my account and go to my Settings.

Next

On this first page of the account sign-up process, prospective donors are required to enter their name, email address, and zip code before proceeding to the next step to sign up for an account. *Id.* ¶ 36. Immediately above the "Next" button, prospective donors are told, "By providing my contact information, I agree that the information I provided may be used in the donation process. For more information on how BioLife processes personal information I can go to the BioLife Privacy Notice." *Id.* The Privacy Notice was hyperlinked, permitting users to read and review more information about how BioLife processes information before proceeding, and confirms, "By using this Website and/or Application . . . you acknowledge that you have read and understood this Notice and you consent to the processing of your Information for the purposes as explained in this Privacy Notice." AiChang Decl. Ex. A at 3.[2] For example, the Privacy Notice informed prospective donors that BioLife collects "Internet Protocol (IP) address" and "email," and that BioLife may use this information to "manage and improve the Website and Application" and share the information with "authorized service providers that perform certain services on [BioLife's] behalf, such as marketing." *Id.* at 1-2.

"[O]nce a user clicks [the] '[N]ext'" button acknowledging agreement to the account sign-up disclosure and hyperlinked Privacy Notice, the Salesforce Evergage and Snapchat Pixel tools allegedly send to Salesforce and Snapchat the prospective donor's "e-mail address" and "IP address." Compl. ¶ 37. Plaintiff asserts that the tools' collection of email and IP addresses allows BioLife to then use this information through Salesforce's and Snapchat's services to improve "marketing, advertising, and analytics." *Id.* ¶ 6.

***Plaintiff's Alleged Account Creation on the BioLife Website.*** Plaintiff Evan Wooten, a California resident, alleges that he "created a BioLife account" on the BioLife website "[i]n or around February 2023." *Id.* In creating his account, Plaintiff "input the necessary information" on the first account sign-

[2] The Court may consider the BioLife Privacy Notice in effect at the time that Plaintiff created his account in February 2023 (*see* AiChang Decl. Ex. A) under the incorporation-by-reference doctrine. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference" doctrine allows a court to consider webpages that provide context for plaintiff's claims); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (considering privacy policy that plaintiff "necessarily had to agree" to in order to create an account with the defendant's service and which "contradict[ed] Plaintiff's claim that he was unaware of" the disclosure of personal information to third parties).

up page shown above, "including his e-mail address." *Id.* After Plaintiff clicked the "Next" button on that page, he claims that the Salesforce Evergage and Snapchat Pixel tools captured his "e-mail address" in "hashed," encrypted "form" and his "IP address." *Id.* ¶¶ 6, 37, 40, 43. Although Plaintiff was informed before clicking the "Next" button that his email and IP addresses "may be used in the donation process" (*id.* ¶ 36) and shared with "authorized service providers that perform certain services on [BioLife's] behalf, such as marketing" (AiChang Decl. Ex. A at 2), Plaintiff alleges that he "did not consent to th[is] collection" (Compl. ¶ 6). After creating his BioLife Account—and agreeing to BioLife's Terms of Use containing a binding arbitration clause to which Plaintiff is subject[3]—Plaintiff alleges that he "continued to access his account" on the BioLife website after that date and did so "as recently as November 2024" (*id.*), but he does not claim that his information was collected during those visits without his consent.

***This Lawsuit.*** In January 2025, Plaintiff filed his Complaint against BioLife for allegedly enabling Salesforce and Snapchat to capture his email and IP addresses on the first account sign-up page on the BioLife website. *Id.* ¶¶ 2, 6. Plaintiff advances "two alternative theories of liability." *Id.* ¶ 3. Specifically, Plaintiff contends that if his email and IP addresses constitute the "contents" of a communication, then BioLife is liable under CIPA section 631 for "wiretapping." *Id.* ¶¶ 1, 3. Alternatively, if this information is not "contents," then Plaintiff contends that BioLife is liable under CIPA section 638.51 for installing a "pen register." *Id.* ¶ 4. Plaintiff brings these two alternatively pleaded claims on behalf of a putative class of "[a]ll California residents who, during the Class Period, proceeded past the first [page] of the BioLife account creation process on the Website while in California and had their information collected and/or intercepted by a third party." *Id.* ¶ 77.

---

[3] When Plaintiff created a BioLife account, he agreed to BioLife's Terms of Use by checking a box on the second page of the account sign-up process confirming that he "[is] agreeing to the BioLife Terms of Use." *See* BioLife, Create Account, https://www.biolifeplasma.com/create-account. Those Terms of Use include a binding arbitration provision. BioLife accordingly expressly reserves and puts Plaintiff on notice of its right to move to compel arbitration of Plaintiff's claims if any aspect of this case survives the instant motion.

# III. ARGUMENT

## A. This Court Lacks Personal Jurisdiction Over BioLife.

Plaintiff bears the burden of establishing personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state"—here, California. *Id.* "California's long-arm statute is co-extensive with federal standards," which permit two forms of jurisdiction: "general jurisdiction and specific jurisdiction." *Id.* at 1015-16. The Complaint invokes only specific jurisdiction.[4] Plaintiff must therefore demonstrate that (1) BioLife purposefully directed its activities at California, and (2) Plaintiff's claims arise out of or relate to BioLife's California activities. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 837 (N.D. Cal. 2021) (applying purposeful-direction test to CIPA claims). The Complaint fails to plead facts establishing either requirement.

***No Purposeful Direction.*** Plaintiff fails to establish that BioLife "expressly aimed" any tortious conduct at California, as required under the purposeful direction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). "[E]xpress aiming asks whether the defendant's allegedly tortious action was expressly aimed at the forum." *Picot*, 780 F.3d at 1214. Here, the allegedly tortious conduct is the use of the Salesforce Evergage and Snapchat Pixel tools on BioLife's nationally accessible website to collect prospective donors' hashed email addresses and IP addresses. Compl. ¶¶ 33, 36-37. Plaintiff does not—and cannot—allege that this is conduct specific to California residents. "The alleged harm"—"the collection of his [] data" on the BioLife website—"would have occurred no matter the state Plaintiff was in." *Sacco v. Mouseflow, Inc.*, 2022 WL 4663361, at *5 (E.D. Cal. Sept. 30, 2022). Where, as here, the plaintiff would have experienced the same injury "wherever he might choose to live or travel,"

---

[4] Plaintiff acknowledged that BioLife is not subject to general jurisdiction in California during the parties' meet-and-confer held pursuant to this Court's Standing Order. Nor could he argue otherwise, because BioLife Plasma Services is a Pennsylvania limited partnership with its principal place of business in Illinois, and Takeda Pharmaceuticals U.S.A. is a Delaware corporation with its principal place of business in Massachusetts. Compl. ¶¶ 7–8; *see BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (corporations' "paradigm forums" for general jurisdiction are "place of incorporation and [] principal place of business"); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n.14 (S.D. Cal. 2018) (limited partnership's paradigm forums are "the place of organization and principal place of business").

the Ninth Circuit has made clear that the express aiming requirement is not satisfied. *Picot*, 780 F.3d at 1214-15.

For these same reasons, California courts routinely dismiss defendants for lack of personal jurisdiction in CIPA suits alleging the use of marketing or analytics tools on nationally accessible websites that "did nothing specifically directed at California or California residents." *See, e.g.*, *Sacco*, 2022 WL 4663361, at *5 (dismissing defendant for lack of personal jurisdiction in CIPA suit alleging collection of plaintiff's interactions with defendant's website); *Massie v. Gen. Motors Co.*, 2021 WL 2142728, at *4-6 (E.D. Cal. May 26, 2021) (same); *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1167, 1171 (C.D. Cal. 2024) (same involving Salesforce website tool); *Conohan v. Gen Digital Inc.*, 2025 WL 864655, at *1 (C.D. Cal. Feb. 19, 2025) (same involving different website tool); *see also Carroll v. J.M. Smucker Co.*, 2023 WL 4053796, at *4 (N.D. Cal. June 15, 2023) (dismissing defendant for lack of personal jurisdiction in privacy suit alleging use of pixel on website that "offered an identical experience regardless of the forum of access").

Nor can BioLife's alleged operation of "plasma donation centers in California" (Compl. ¶ 11) establish express aiming, because operation of physical donation centers is not the "allegedly tortious conduct" that Plaintiff challenges in this suit. *Hasson v. FullStory, Inc.*, 114 F.4th 181, 192, 194 (3d Cir. 2024) (rejecting a defendant's "operation of 85 restaurants" in the forum as irrelevant to whether the defendant "expressly aimed" the allegedly tortious use of a website tool at the forum). In any event, the BioLife website "Locations" page cited in the Complaint (at ¶ 11 n.1) lists donation centers across the country, "confirm[ing] that the website was accessible to all but targeted at no one in particular." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 142-43 (4th Cir. 2020) (no express aiming based "on the fact that the website includes [the forum state] as an option in the drop-down menu" for hotel reservations); *see* BioLife, Locations By State, https://www.biolifeplasma.com/locations. Finally, it makes no difference that Plaintiff alleges that he "[was] harmed in California" where his information was "intercepted" (Compl. ¶ 11), because Plaintiff's decision to access the BioLife website while in California is precisely the sort of "unilateral activity" of a plaintiff that the Supreme Court has held "cannot satisfy the requirement of contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 286, 290-91 (2014).

***No Suit-Relatedness.*** Plaintiff also fails to plead facts establishing that his claims arise out of or relate to any of BioLife's alleged contacts with California. Plaintiff's claims stem from alleged conduct that occurred outside of California: he alleges that BioLife used the Salesforce Evergage and Snapchat Pixel tools to capture users' email and IP addresses on the BioLife website, operated from outside the state (Compl. ¶¶ 7-8), and that this conduct allegedly violated CIPA (*id.* ¶¶ 3-4). Plaintiff asserts the conduct at issue "directly relate[s] to" BioLife's "physical operations in California" (*id.* ¶ 11), but Plaintiff's claims challenge BioLife's operation of a nationally accessible website and its alleged use of Salesforce and Snapchat's technology on that website, not its operation of plasma donation centers in California. *See id.* ¶¶ 2, 5, 37. In the end, nothing links Plaintiff's claims to California beyond the allegation that Plaintiff visited the BioLife website "while in California." *Id.* ¶ 6. "But the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 284-85 (explaining that "the relationship must arise out of contacts that the defendant *himself* creates with the forum State").

**B. The Complaint Fails To State a Viable Claim.**

Plaintiff's failure to state a claim under CIPA's wiretap (Cal. Penal Code § 631) and pen register (*id.* § 638.51) provisions independently warrants dismissal of the Complaint.

**1. Plaintiff Consented to the Alleged Data Practices.**

"[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019); *see* Cal. Penal Code § 631(a) (prohibiting conduct that is "unauthorized," done "without the consent of all parties to the communication, or in any unauthorized manner"); Cal. Penal Code § 638.51(b)(5) (prohibiting conduct without "consent of the user"). As the California Supreme Court has explained, "no wrong is done to one who consents." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994); *see also* Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it.").

Plaintiff cannot state a claim under CIPA because he does not and cannot plead facts plausibly establishing lack of "prior consent." Compl. ¶¶ 20, 102. Plaintiff agreed to BioLife's alleged data collection practices *before* his email and IP address were purportedly collected when creating his BioLife account. Specifically, on the first account sign-up page, immediately above the "Next" button, Plaintiff was presented with the following prominent disclosure: "By providing my contact information, I agree

that the information I provided may be used in the donation process. For more information on how BioLife processes my personal information I can go to the BioLife Privacy Notice." *Id.* ¶ 36. The Privacy Notice was hyperlinked, permitting Plaintiff to read and review more information about how BioLife processes his information before proceeding, and confirmed, "By using this Website and/or Application . . . you acknowledge that you have read and understood this Notice and you consent to the processing of your Information for the purposes as explained in this Privacy Notice." AiChang Decl. Ex. A at 3.

The Privacy Notice disclosed the precise data practices that Plaintiff now challenges and to which he claims he did consent: that BioLife collects information such as "Internet Protocol (IP) address" and "email," and that BioLife may use this information to "manage and improve the Website and Application" and share the information with "authorized service providers that perform certain services on [BioLife's] behalf, such as marketing." *Id.* at 1-2. That BioLife "use[s] th[is] information . . . for data analytics and marketing purposes" to facilitate plasma donations (Compl. ¶ 2) was also disclosed on the account sign-up page itself, where Plaintiff provided his email address and "agree[d] that the information I provided may be used in the donation process." *Id.* ¶ 36. A "reasonable user who viewed [BioLife's] disclosures"—made available to Plaintiff at the first step of the account creation process (*see id.*)—"[would] have understood that [BioLife] was collecting" the information allegedly at issue here. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014) (dismissing wiretapping claims based on website operator's disclosure of alleged data practices).

By affirmatively clicking the "Next" button acknowledging his agreement to the account sign-up disclosure and hyperlinked Privacy Notice (Compl. ¶¶ 6, 37), Plaintiff physically manifested his consent to BioLife's alleged data collection practices. Courts routinely hold that similar flows establish consent. *See, e.g., Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (plaintiff consented by "click[ing] a 'Sign In' button" where the "relevant warning language and hyperlink to the Terms of Use . . .[were] located directly below the sign-in button"); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (plaintiffs asserting wiretapping claims under CIPA consented by "clicking the 'Place Order' button—to acknowledge that they were agreeing to the terms of the privacy policy"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (plaintiff with "opportunity to

review the terms of service in the form of a hyperlink immediately under the 'I accept' button" that "she admittedly clicked" was bound by said terms).

Furthermore, Plaintiff consented *before* his email and IP address were allegedly collected. As the Complaint acknowledges, the website tools do not allegedly "intercept the user's e-mail address . . . [and] also acquire the user's IP address" until "a user clicks 'next.'" Compl. ¶ 37. Accordingly, Plaintiff cannot plead lack of prior consent because he consented to the collection of his email and IP address "immediately prior to the moment at which [BioLife] is alleged to have engaged in wrongful conduct." *Perkins*, 53 F. Supp. 3d at 1212-13 (dismissing wiretap claim because plaintiffs "consented to or authorized the collection of email addresses" *before* collection had occurred by clicking "Allow" button acknowledging disclosures); *cf.* Compl. ¶ 20 (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (reversing dismissal of CIPA claim where plaintiff consented to data collection *after* collection had already occurred)).

**2. Plaintiff's Claims Are Untimely.**

"CIPA has a one-year statute of limitations." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023). The limitations period began to run "[i]n or around February 2023," when Plaintiff alleges that his email and IP address were collected while creating his account on the BioLife website. Compl. ¶ 6; *see Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988) (general rule is that limitations period begins to run "on the date of injury"). Because Plaintiff waited to bring this lawsuit for nearly a year after the limitations period expired in February 2024, Plaintiff's claims are time-barred. *See, e.g.*, *Javier*, 649 F. Supp. 3d at 901 (dismissing as time-barred a CIPA claim brought more than one year after alleged data collection); *Lau v. Gen Digital Inc.*, 2023 WL 10553772, at *2-3 (N.D. Cal. Sept. 13, 2023) (same); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. 2020) (same).

Plaintiff's Complaint does not invoke any doctrines that would serve to toll the statute of limitations, and he cannot belatedly do so in opposition to BioLife's motion. "[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006). Accordingly, "courts within the Ninth Circuit have granted motions to dismiss where," as here, "the running of the statute of limitations is apparent on the face of the complaint and the

plaintiff has failed to allege facts supporting equitable tolling or estoppel." *Wolf v. Travolta*, 2014 WL 6685560, at *9 (C.D. Cal. Nov. 24, 2014) (collecting cases and dismissing claim as time-barred where the complaint "does not even mention equitable tolling or any facts that might support it"); *see also, e.g.*, *Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 560 (N.D. Cal. 2021) (dismissing claim as time-barred and rejecting plaintiff's attempt to invoke tolling in his opposition because, "if Plaintiff intends to rely on a ground for tolling, Plaintiff must include allegations that support tolling in Plaintiff's Complaint").

Nor could Plaintiff plead facts sufficient to invoke any tolling doctrines. A tolling doctrine, such as the discovery rule, "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). Plaintiffs have inquiry notice when they have "information of circumstances to put [them] on inquiry" or "the opportunity to obtain knowledge from sources open to [their] investigation." *Id.* at 807-08. In this case, as demonstrated above, Plaintiff had inquiry notice, if not actual notice, of his claims when he consented to the Privacy Notice disclosing the alleged data collection practices on the first account sign-up page. *Supra* at 7-9. In fact, while not necessary to resolve BioLife's motion, Plaintiff consented to the Privacy Notice a second time on the next account sign-up page by checking a box confirming that he "read and understand[s] BioLife's Privacy Notice that explains how BioLife handles my personal data that has been or will be collected, stored and used by BioLife." BioLife, Create Account, https://www.biolifeplasma.com/create-account. Since "[t]he privacy policy to which he assented"—on two separate occasions—"tells him categorically" of the challenged data collection practices, Plaintiff cannot invoke any tolling doctrine because he was at least "on inquiry notice" of his CIPA claims at the time of his alleged injury. *Javier v. Assurance IQ, LLC*, 2023 WL 3933070, at *3 (N.D. Cal. June 9, 2023) (dismissing CIPA claim as time-barred and rejecting application of tolling doctrine).

**3. Plaintiff Lacks Statutory Standing.**

Only a person "who has been injured by a violation of [CIPA] may bring an action against the person who committed the violation." Cal. Penal Code § 637.2(a). To bring a CIPA claim, a plaintiff must therefore "allege a concrete injury-in-fact." *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811, at *4 (Cal. Super. July 9, 2024). Plaintiff lacks statutory standing because he fails to allege any such concrete

injury here. As the Complaint acknowledges, the only data allegedly collected was Plaintiff's "e-mail address and IP address" (Compl. ¶ 6), which was either "hashed" (email) or consisted of "a set of numbers assigned to a device on a network" (IP address) (*id.* ¶¶ 43, 48). This is not "personal information" giving rise to a concrete injury-in-fact because the data "in itself provides no information about the user." *Rodriguez v. Fountain9, Inc.*, 2024 WL 4905217, at *4 (Cal. Super. Nov. 21, 2024) (no CIPA statutory standing based on collection of IP address). Although Plaintiff speculates about how "[h]ashed e-mails can be decrypted" (Compl. ¶ 45) or "IP addresses can be used" (*id.* ¶ 51), he does not allege that this data was *actually* decrypted or used in this way. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (rejecting as irrelevant allegations about how third-party website technology "could be used" that failed to specify how the technology was "*actually us[ed]*").

**4. Plaintiff Fails To Plead the Elements of His Claims.**

**a) The CIPA Section 631 "Wiretap" Claim Should Be Dismissed.**

Section 631 prohibits (1) "intentional wiretapping," and (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 191 n.1, 192 (1978); *see* Cal. Penal Code § 631(a).[5] Plaintiff does not—and cannot—pursue a claim under the first clause because "[t]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023) (collecting cases). Plaintiff instead pursues an aiding-and-abetting claim against BioLife under the theory that Salesforce and Snapchat violated the second clause (*see* Compl. ¶¶ 90-92), which fails for multiple reasons discussed below.

***Plaintiff's Communications Were Not Intercepted.*** Plaintiff fails to plausibly allege that Salesforce or Snapchat committed a predicate interception under CIPA section 631's second clause.

---

[5] The only other actionable clause of the subdivision prohibits "attempt[s] to use or communicate information obtained as a result of" activities under the first two clauses. *Tavernetti*, 22 Cal. 3d at 192–93; *see* Cal. Penal Code § 631(a). A claim brought under this clause must be predicated on a violation of the other clauses. As explained in the text, Plaintiff has failed to state such a predicate violation, so the derivative "use or communicate" claim also fails. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134, 1137 (E.D. Cal. 2021) (dismissing claim under clause imposing derivative liability for use of unlawfully obtained information where there was no predicate violation).

Under that clause, Plaintiff must plausibly allege that Salesforce or Snapchat themselves "reads, or attempts to read, or to learn the contents" of his communication—which he describes as his "e-mail address and IP address" (Compl. ¶ 6)—"while the same is in transit" to BioLife. Cal. Penal Code § 631(a). Plaintiff fails to do so.

Plaintiff's email and IP addresses are not "contents" in the first place. "[C]ontents refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). As the Ninth Circuit has explained, "email and IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers," which are the prototypical example of record information. *Id.* at 1108; *see Svenson v. Google Inc.*, 2015 WL 1503429, at *8 (N.D. Cal. Apr. 1, 2015) ("telephone number[s]" constitute "record information"). For these reasons, courts routinely hold that email and IP addresses are not actionable "contents." *See, e.g.*, *Ramos v. Gap, Inc.*, 2024 WL 4351868, at *5 (N.D. Cal. Sept. 30, 2024) ("email address" and "IP address" are not "contents" under section 631); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("Plaintiff's IP address" not "contents"); *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *5 (S.D. Cal. July 18, 2024) ("email addresses" not "contents").

Nor does Plaintiff plausibly allege that Salesforce or Snapchat "read or attempted to read" his email and IP addresses "in transit." A plaintiff cannot satisfy this requirement with "vague allegations about how [the] data collection occurs 'in real time,'" *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), as the Complaint alleges here (Compl. ¶¶ 62, 69, 72). Moreover, Plaintiff admits that his email address, in particular, was allegedly transmitted "in hashed form." *Id.* ¶ 43 (alleging that Snapchat "receives the user's e-mail in Sha256 format"); *see id.* ¶ 40 (alleging that Salesforce "acquires a user's e-mail address . . . in Base64 format"). Thus, Salesforce and Snapchat could not possibly have read or attempted to read Plaintiff's email address while in transit, because his email address was "encrypted while in transit." *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *7 (C.D. Cal. July 12, 2024) (no reading by Salesforce in transit where "messages sent . . . are encrypted while in transit");

*Williams v. DDR Media, LLC*, --- F. Supp. 3d ----, 2024 WL 4859078, at *6 (N.D. Cal. Nov. 20, 2024) (similar as to "hashed" data).

***BioLife Did Not Aid or Abet Any Alleged Interception.*** To state an aiding-and-abetting claim under CIPA section 631, a plaintiff must plausibly allege the defendant "kn[ew] the other's conduct constitutes a breach of duty"—in other words, that the conduct violated CIPA. *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024). Even if Plaintiff had plausibly alleged that Salesforce and Snapchat engaged in a predicate interception under CIPA section 631 (and he does not), he does not plead that BioLife had knowledge of any such CIPA violation. "Absent factual allegations on that specific issue, Plaintiff has failed to state an aiding and abetting claim." *Id.* (dismissing aiding-and-abetting claim for failure to plead website operator's knowledge of website vendor's alleged "wiretapping and eavesdropping in violation of CIPA"); *see also Valenzuela v. The Kroger Co.*, 2025 WL 851075, at *2 (C.D. Cal. Mar. 13, 2025) (dismissing aiding-and-abetting claim for failure to "include plausible allegations that explain how [website operator] either knew [vendor's] conduct constituted a breach of duty" or committed a breach itself).

**b) The CIPA Section 638.51 "Pen Register" Claim Should Be Dismissed.**

Implicitly conceding that his claim under CIPA section 631 is legally untenable, Plaintiff brings a claim under CIPA section 638.51 "in the alternative if the Court finds the information [allegedly] collected here by the Third Parties was not the 'contents' of any communication." Compl. ¶ 97. Section 638.51 prohibits the "install[ation] or use [of] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). In this case, Plaintiff contends that the Salesforce Evergage and Snapchat Pixel tools, as allegedly used by BioLife, constitute "pen registers." For multiple reasons, Plaintiff's alternatively pleaded "pen register" claim fails as well.

***CIPA's Pen Register Provision Does Not Apply to Internet Communications.*** CIPA section 638.51 does not prohibit the alleged collection of internet communications at issue here. The California Legislature enacted CIPA section 638.51 "in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register." *Sanchez v. Cars.com, Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025). As the Complaint recognizes (Compl. ¶ 25), a "pen register" has long been understood to mean "a mechanical device which records the numbers dialed from

a telephone." *People v. Blair*, 25 Cal.3d 640, 654 n.11 (1979). Consistent with this understanding, the California Legislature defined a "pen register" in the statute to mean "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

In accordance with "th[is] plain language and legislative intent," California courts have confirmed that CIPA's pen register provision prohibits the use of devices or processes "used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications" like Plaintiff alleges here. *Sanchez*, 2025 WL 487194, at *3 (dismissing CIPA pen register claim based on alleged "software used by a website to improve its user functionality and the effectiveness of its marketing"); *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024) ("Section 638.50 does not address the privacy rights of Internet users."). Indeed, within the same statute, the California Legislature requires that an order authorizing the use of a pen register "shall specify"—without exception—"[t]he number and, if known, physical location of the telephone line to which the pen register . . . is to be attached." Cal. Penal Code § 638.52(d)(3). Plaintiff's attempt to expand CIPA's pen register provision to internet communications would make that requirement a nullity and therefore "violate the rule that courts should give meaning to every word of a statute." *People v. Franco*, 6 Cal. 5th 433, 437-38 (2018).

***The Salesforce Evergage and Snapchat Pixel Tools Are Not Pen Registers.*** Plaintiff also fails to plausibly allege that the Salesforce Evergage and Snapchat Pixel tools are "pen registers" within the meaning of the statute. A "pen register" captures "outgoing addressing information," *Aviles v. Liveramp, Inc.*, 2025 WL 487196, at *2 (Cal. Super. Jan. 28, 2025), or put simply, "the numbers dialed from a telephone." *Blair*, 25 Cal.3d at 654 n.11. Thus, even if CIPA's pen register provision extended to website communications (and as explained above, it does not), "[t]he analog of the number dialed by telephone here is the IP address and related information of a website accessed by a computer—but not the computer's own IP address or identifying information." *Aviles*, 2025 WL 487196, at *2. Plaintiff therefore cannot establish that the Salesforce Evergage and Snapchat Pixel tools are "pen registers," because he alleges that

these tools collected only *his* email and IP address, not the "IP address and related information" of the BioLife "website accessed." *Id.* (dismissing CIPA pen register claim based on website tool's alleged collection of plaintiff's email and IP address).

***CIPA Does Not Impose Liability for the Collection of IP Addresses.*** There is "no cause of action under [Section 638.51]" for the "collection of incoming IP addresses by [a website operator]" because that is "what happens every time any user accesses any website." *Casillas*, 2024 WL 4873370, at *3. "The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Id.* at *4. Accordingly, Plaintiff's claim independently fails to the extent premised on the alleged collection of his IP address, because "there is no privacy interest in IP addresses provided to a service provider or website." *Id.* at *6 (dismissing CIPA pen register claim for this reason); *see also Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024) (same; "Plaintiff's IP address is not the type of information collected by pen registers"); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (same; noting contrary result would "potentially disrupt a large swath of internet commerce").

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss the Complaint for lack of personal jurisdiction or, alternatively, with prejudice for failure to state a claim.

DATED: April 4, 2025

COVINGTON & BURLING LLP

By: /s/ Cortlin H. Lannin

CORTLIN H. LANNIN (SBN 266488)
clannin@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

HANNAH K. NELSON (SBN 347061)
hnelson@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc.*