CORTLIN H. LANNIN (SBN 266488)
clannin@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

HANNAH K. NELSON (SBN 347061)
hnelson@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendants BioLife Plasma Services L.P.
and Takeda Pharmaceuticals U.S.A., Inc.*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVAN WOOTEN and SARKIS OGANYAN, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>BIOLIFE PLASMA SERVICES L.P. and TAKEDA PHARMACEUTICALS U.S.A., INC.,<br><br>   Defendants. | Civil Case No.: 1:25-cv-00099-KES-SKO<br><br>**DEFENDANTS BIOLIFE PLASMA SERVICES L.P.'S AND TAKEDA PHARMACEUTICALS U.S.A., INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Hearing Date: September 8, 2025<br>Hearing Time: 1:30 p.m.<br>Honorable Kirk E. Sherriff |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 8, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Kirk E. Sherriff, in Courtroom 6 of the United States District Court for the Eastern District of California, located at Robert E. Coyle United States Courthouse, 2500 Tulare Street, Fresno, California 93721, Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc., will and hereby do move for an order dismissing Plaintiff Evan Wooten's and Sarkis Oganyan's First Amended Complaint (Dkt. 17) pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6).

This motion is made following the conference of counsel pursuant to Section I.C of this Court's Standing Order, which took place on June 4, 2025 by videoconference.  Counsel for the parties discussed thoroughly the substance of Defendants' contemplated motion, including each of the arguments for dismissal set out in this present motion, to determine whether they could reach any potential resolution. Despite their good faith efforts, counsel for the parties were unable to reach agreement on all issues. Accordingly, the undersigned certifies that meet and confer efforts have been exhausted.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declarations of Thomas Szatkowski ("Szatkowski Decl.") and Hannah K. Nelson ("Nelson Decl.") and accompanying exhibits, and such further evidence and argument as may be presented to the Court at or before the hearing on this matter.

DATED:  June 6, 2025                    COVINGTON & BURLING LLP

By: */s/ Cortlin H. Lannin*

Cortlin H. Lannin

*Attorney for Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc.*

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 2

III.  ARGUMENT ...................................................................................... 5

    A.    This Court Lacks Personal Jurisdiction Over BioLife. ........................... 5

    B.    The FAC Fails To State a Viable Claim. .............................................. 7

        1.    Plaintiffs Consented to the Alleged Data Practices. ................................. 7

        2.    Plaintiffs Lack Statutory Standing. .......................................................... 9

        3.    Plaintiffs Fail To Plead the Elements of Their Claims. ........................... 10

            a)    The CIPA Section 631 "Wiretap" Claim Should Be Dismissed... 10

            b)    The CIPA Section 638.51 "Pen Register" Claim Should Be Dismissed. ................................................................................ 12

        4.    Plaintiff Wooten's Claims Are Untimely. ............................................... 14

IV.  CONCLUSION................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Augustine v. Great Wolf Resorts, Inc.*,
　2024 WL 3450967 (S.D. Cal. July 18, 2024) ........................................................11

*Aviles v. Liveramp, Inc.*,
　2025 WL 487196 (Cal. Super. Jan. 28, 2025) ...................................................13, 14

*Bliss v. CoreCivic, Inc.*,
　978 F.3d 1144 (9th Cir. 2020) ...............................................................................15

*BNSF Ry. Co. v. Tyrrell*,
　581 U.S. 402 (2017)..................................................................................................5

*Briskin v. Shopify, Inc.*
　135 F.4th 739 (9th Cir. 2025) ................................................................................6, 7

*Boschetto v. Hansing*,
　539 F.3d 1011 (9th Cir. 2008) ..................................................................................5

*Brodsky v. Apple Inc.*,
　445 F. Supp. 3d 110 (N.D. Cal. 2020) ....................................................................15

*Byars v. Hot Topic, Inc.*,
　656 F. Supp. 3d 1051 (C.D. Cal. 2023) ..................................................................10

*Casillas v. Transitions Optical, Inc.*,
　2024 WL 4873370 (Cal. Super. Sept. 9, 2024)....................................................13, 14

*Doe I v. Google LLC*,
　741 F. Supp. 3d 828 (N.D. Cal. 2024) ......................................................................9

*Dohrmann v. Intuit, Inc.*,
　823 F. App'x 482 (9th Cir. 2020) ..............................................................................8

*Dutra v. BFI Waste Mgmt. Sys. of N. America, Inc.*,
　2015 WL 2251203 (N.D. Cal. May 13, 2015) .........................................................16

*Esparza v. UAG Escondido A1 Inc.*,
　2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ...........................................................12

*Fox v. Ethicon Endo-Surgery, Inc.*,
　35 Cal. 4th 797 (2005) ............................................................................................15

*Garcia v. Enter. Holdings, Inc.*,
　78 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................................................................3

*Graham v. Noom, Inc.*,
    533 F. Supp. 3d 823 (N.D. Cal. 2021) ........................................................................5

*Gutierrez v. Converse Inc.*,
    2024 WL 3511648 (C.D. Cal. July 12, 2024) ...........................................................11

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) ................................................................................6, 7

*Hidalgo v. JPMorgan Chase Bank, N.A.*,
    2025 WL 1370488 (S.D. Cal. May 12, 2025) .............................................................6

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) ...................................................................................................7

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................................................................9

*Javier v. Assurance IQ, LLC*,
    2022 WL 1744107 (9th Cir. May 31, 2022) ..............................................................9

*Javier v. Assurance IQ, LLC*,
    2023 WL 3933070 (N.D. Cal. June 9, 2023) ...........................................................16

*Javier v. Assurance IQ, LLC*,
    649 F. Supp. 3d 891 (N.D. Cal. 2023) ...............................................................14, 15

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d 1103 (1988) ..........................................................................................14

*Katz-Lacabe v. Oracle America, Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ......................................................................9

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ..................................................................................3

*Lakes v. Ubisoft, Inc.*,
    --- F. Supp. 3d ----, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) .....................8, 16

*Lau v. Gen Digit. Inc.*,
    2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .....................................................15

*Licea v. Hickory Farms LLC*,
    2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .....................................................14

*Maddalena v. Toole*,
    2013 WL 5491869 (C.D. Cal. Oct. 1, 2013) ...........................................................15

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021)...................................................................10

*Moreno v. Medina*,
    2013 WL 3350819 (E.D. Cal. July 3, 2013) ...........................................................11

*In re Packaged Seafood Prods. Antitrust Litig.*,
    338 F. Supp. 3d 1118 (S.D. Cal. 2018)...................................................................5

*Palacios v. Fandom, Inc.*,
    2024 WL 5494527 (Cal. Super. Sept. 24, 2024).....................................................14

*People v. Blair*,
    25 Cal.3d 640 (1979) ..............................................................................13, 14

*People v. Franco*,
    6 Cal. 5th 433 (2018) ..............................................................................13

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ...................................................................9

*Picot v. Weston*,
    780 F.3d 1206 (9th Cir. 2015) .............................................................................5

*Ramos v. Gap, Inc.*,
    2024 WL 4351868 (N.D. Cal. Sept. 30, 2024) .....................................................11

*Reyes v. Educ. Credit Mgmt. Corp.*,
    773 F. App'x 989 (9th Cir. 2019) ......................................................................7

*Rodriguez v. Fountain9, Inc.*,
    2024 WL 3886811 (Cal. Super. July 9, 2024) .....................................................9

*Rodriguez v. Fountain9, Inc.*,
    2024 WL 4905217 (Cal. Super. Nov. 21, 2024).....................................................9

*Rodriguez v. Plivo Inc.*,
    2024 WL 5184413 (Cal. Super. Oct. 2, 2024) .....................................................14

*Rosenthal v. Bloomingdales.com, LLC*,
    101 F.4th 90 (1st Cir. 2024)...................................................................6

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
    2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)...................................................................16

*Sanchez v. Cars.com, Inc.*,
    2025 WL 487194 (Cal. Super. Jan. 27, 2025) .....................................................13

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................5

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ...............................................8

*Svenson v. Google Inc.*,
    2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...............................................11

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) .........................................................8

*Tavernetti v. Superior Court*,
    22 Cal. 3d 187 (1978) ................................................................................10

*Torres v. Prudential Fin., Inc.*,
    2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .............................................12

*Valenzuela v. Kroger Co.*,
    2025 WL 851075 (C.D. Cal. Mar. 13, 2025) ..............................................12

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ......................................................11

*Williams v. DDR Media, LLC*,
    757 F. Supp. 3d 989 (N.D. Cal. 2024) ........................................................11

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ......................................................11

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ..............................................................10, 11

**Statutes**

Cal. Civ. Code § 3515 ......................................................................................7

Cal. Penal Code § 631 ............................................................................ *passim*

Cal. Penal Code § 637.2 ................................................................................9, 10

Cal. Penal Code § 638.50 ...............................................................................13

Cal. Penal Code § 638.51 ...........................................................................7, 12

Cal. Penal Code § 638.52 ...............................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant BioLife Plasma Services L.P. offers services that allow individuals to safely and responsibly donate plasma that Defendant Takeda Pharmaceuticals U.S.A., Inc. then uses to make more than 20 different types of medicine for people with a variety of rare conditions.[1]  Prospective plasma donors can schedule appointments at donation centers all across the nation through the BioLife website (www.biolifeplasma.com).  When prospective donors wish to schedule an appointment, they must first create a BioLife account and "agree that the information [they] provide[]" in creating an account "may be used in the donation process," in accordance with "the BioLife Privacy Notice."   First Amended Complaint ("FAC") ¶ 41.  BioLife's hyperlinked Privacy Notice, in turn, discloses that BioLife collects "Internet Protocol (IP) address" and "email," and that the information collected may be used to "manage and improve the Website and Application" and shared with "authorized service providers that perform certain services on [BioLife's] behalf[,] such as marketing."  Szatkowski Decl. Ex. A at 1-2.

Plaintiffs Evan Wooten and Sarkis Oganyan are two such prospective donors who allegedly created accounts on the BioLife website in February 2023 and January 2024, respectively.  Plaintiffs allege that BioLife implemented tools on its website made by Salesforce and Snap, and that those companies used those tools to collect certain information about user activities on the website in order to provide BioLife with data analytics and marketing services.  Specifically, Plaintiffs allege that these tools captured their email and IP addresses without their consent, even though the Privacy Notice authorized BioLife to use those tools to collect the very information they now claim was "wiretapped" in violation of the California Invasion of Privacy Act ("CIPA").  For multiple reasons, Plaintiffs' FAC should be dismissed.

*First*, this Court lacks personal jurisdiction over BioLife.  Plaintiffs have not carried their burden to plead facts establishing that BioLife purposefully directed the allegedly tortious use of the challenged website tools at California, or that their claims arise out of or relate to any of BioLife's California-related activities.

---

[1] This brief hereafter refers to both Defendants collectively as "BioLife."

*Second*, Plaintiffs fail to state either of their alternative claims under CIPA's wiretap and pen register provisions.  Plaintiffs' own allegations establish that they gave prior consent to the challenged data collection practices disclosed in BioLife's Privacy Notice.  And even if Plaintiffs had not consented—and they did—Plaintiffs do not allege an injury sufficient to confer statutory standing, they fail to plead other elements of their claims, and Plaintiff Wooten's claims are untimely.  The Court should dismiss Plaintiffs' FAC with prejudice, especially since Plaintiffs have already amended once in response to BioLife's first motion to dismiss.

## II.    BACKGROUND

***BioLife's Alleged Use of the Salesforce Evergage and Snapchat Pixel Tools.***  Salesforce and Snap each provide web-based "data analytics and marketing" services to help BioLife better reach individuals who may be interested in donating plasma used for life-changing therapy treatments.  FAC ¶ 2.  In order to use these services, BioLife allegedly "installed" the Salesforce Evergage and Snapchat Pixel tools on the BioLife website (www.biolifeplasma.com), including on the webpage shown in the following screen excerpted in the FAC, which reflects "step one of three" when "signing up for an account through the Website."  *Id.* ¶¶ 2, 41.



On this first page of the account sign-up process, prospective donors are required to enter their name, email address, and zip code before proceeding to the next step to sign up for an account.  *Id.* ¶ 41. Immediately above the "Next" button, prospective donors are told, "By providing my contact information, I agree that the information I provided may be used in the donation process.  For more information on how BioLife processes my personal information I can go to the BioLife <u>Privacy Notice</u>."  *Id.*  The Privacy Notice was hyperlinked, permitting users to read and review more information about how BioLife processes information before proceeding, and confirms, "By using this Website and/or Application . . . you acknowledge that you have read and understood this Notice and you consent to the processing of your Information for the purposes as explained in this Privacy Notice."  Szatkowski Decl. Ex. A at 3.[2]  For example, the Privacy Notice informed prospective donors that BioLife collects "Internet Protocol (IP) address" and "email," and that BioLife may use this information to "manage and improve the Website and Application" and share the information with "authorized service providers that perform certain services on [BioLife's] behalf, such as marketing."  *Id.* at 1-2.

"[O]nce a user clicks [the] '[N]ext'" button acknowledging agreement to the account sign-up disclosure and hyperlinked Privacy Notice, the Salesforce Evergage and Snapchat Pixel tools allegedly send to Salesforce and Snap the prospective donor's "e-mail address" and "IP address."  FAC ¶ 42. Plaintiffs assert that the tools' collection of email and IP addresses allows BioLife to then use this information through Salesforce's and Snap's services to improve "marketing, advertising, and analytics." *Id.* ¶¶ 6, 8.

***Plaintiffs' Alleged Account Creation on the BioLife Website.***  Plaintiffs Evan Wooten and Sarkis Oganyan are California residents who each allege that they "created a BioLife account" on the BioLife

---

[2] The Court may consider the BioLife Privacy Notice in effect at the time that Plaintiffs created their accounts in February 2023 and January 2024 (*see* Szatkowski Decl. Ex. A) under the incorporation-by-reference doctrine.  *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("incorporation by reference" doctrine allows a court to consider webpages that provide context for plaintiff's claims); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (considering privacy policy that plaintiff "necessarily had to agree" to in order to create an account with the defendant's service and which "contradict[ed] Plaintiff's claim that he was unaware of" the disclosure of personal information to third parties).

website "[i]n or around February 2023" in Plaintiff Wooten's case, and "[o]n or about January 28, 2024" in Plaintiff Oganyan's. *Id.*

In creating their accounts, Plaintiffs "input the necessary information" on the first account sign-up page shown above, "including [their] e-mail address[es]." *Id.* After Plaintiffs clicked the "Next" button on that page, they claim that the Salesforce Evergage and Snapchat Pixel tools captured their "e-mail address" in "hashed," encrypted "form," as well as their "IP address." *Id.* ¶¶ 6, 8, 42, 47, 52, 53. Even though Plaintiffs were informed before clicking the "Next" button that their email and IP addresses "may be used in the donation process" (*id.* ¶ 41) and shared with "authorized service providers that perform certain services on [BioLife's] behalf[,] such as marketing" (Szatkowski Decl. Ex. A at 2), Plaintiffs allege that they "did not consent to th[is] collection" (FAC ¶¶ 6, 8). After creating their BioLife accounts—and agreeing to BioLife's Terms of Use containing a binding arbitration clause to which Plaintiffs are subject[3]—Plaintiffs allege that they "continued to access [their] account[s]" on the BioLife website, but they do not claim that their information was collected during those subsequent visits without their consent. FAC ¶¶ 6-9. In other words, this case solely concerns the alleged collection of each Plaintiff's email address and IP address on the first page of the account sign-up process.

***This Lawsuit.*** In January 2025, Plaintiff Wooten filed his original Complaint against BioLife. *See* Dkt. 1. After BioLife moved to dismiss that complaint, Plaintiff Wooten opted to file the FAC—adding additional Plaintiff Oganyan—in lieu of opposing BioLife's motion. The FAC is substantially similar to the prior complaint. Plaintiffs assert the same claims against BioLife for allegedly enabling Salesforce and Snap to capture their email and IP addresses on the first account sign-up page on the BioLife website. FAC ¶¶ 2, 6, 8. Plaintiffs also continue to advance the same "two alternative theories of liability." *Id.* ¶ 3. Specifically, Plaintiffs contend that if their email and IP addresses constitute the "contents" of a communication, then BioLife is liable under CIPA section 631 for "wiretapping." *Id.* ¶¶ 1, 3.

---

[3] When Plaintiffs created a BioLife account, they agreed to BioLife's Terms of Use by checking a box on the second page of the account sign-up process confirming that they "[are] agreeing to the BioLife <u>Terms of Use</u>." *See* BioLife, Create Account, https://www.biolifeplasma.com/create-account. Those Terms of Use include a binding arbitration provision. BioLife accordingly expressly reserves and puts Plaintiffs on notice of its right to move to compel arbitration of Plaintiffs' claims if any aspect of this case survives the instant motion.

Alternatively, if this information is not "contents," then Plaintiffs contend that BioLife is liable under CIPA section 638.51 for installing a "pen register." *Id.* ¶ 4. Plaintiffs bring these two alternatively pleaded claims on behalf of a putative class of "[a]ll California residents who, during the Class Period, proceeded past the first [page] of the BioLife account creation process on the Website while in California and had their information collected and/or intercepted by a third party." *Id.* ¶ 101.

## III.    ARGUMENT

### A.    This Court Lacks Personal Jurisdiction Over BioLife.

Plaintiffs bear the burden of establishing personal jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state"—here, California. *Id.* "California's long-arm statute is co-extensive with federal standards," which permit two forms of jurisdiction: "general jurisdiction and specific jurisdiction." *Id.* at 1015-16. The FAC invokes only specific jurisdiction.[4] Plaintiffs must therefore demonstrate that (1) BioLife purposefully directed its activities at California, and (2) Plaintiffs' claims arise out of or relate to BioLife's California activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831, 837 (N.D. Cal. 2021) (applying purposeful-direction test to CIPA claims). The FAC fails to plead facts establishing either requirement.

*No Purposeful Direction.* Plaintiffs fail to establish that BioLife "expressly aimed" any tortious conduct at California, as required under the purposeful direction test. *Schwarzenegger*, 374 F.3d at 803. "[E]xpress aiming asks whether the defendant's allegedly tortious action was expressly aimed at the forum." *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015). Here, the allegedly tortious conduct is the use of the Salesforce Evergage and Snapchat Pixel tools on BioLife's nationally accessible website to

---

[4] Plaintiffs acknowledged that BioLife is not subject to general jurisdiction in California during the parties' meet-and-confer held pursuant to this Court's Standing Order. Nor could they argue otherwise, because BioLife Plasma Services is a Pennsylvania limited partnership with its principal place of business in Illinois, and Takeda Pharmaceuticals U.S.A. is a Delaware corporation with its principal place of business in Massachusetts. FAC ¶¶ 10-11; *see BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (corporations' "paradigm forums" for general jurisdiction are "place of incorporation and [] principal place of business"); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1139 n.14 (S.D. Cal. 2018) (limited partnership's paradigm forums are "the place of organization and principal place of business").

collect Plaintiffs' hashed email address and IP address.  FAC ¶¶ 38, 41-42.  Plaintiffs do not—and cannot—allege that this alleged conduct was targeted at California because Plaintiffs do not allege that BioLife knew that they were "in California" (*id.* ¶ 15) *before* these tools allegedly collected their email and IP addresses.  *Hasson v. FullStory, Inc.*, 114 F.4th 181, 188 & n.1, 191 (3d Cir. 2024) (affirming dismissal for failure to plead express aiming because plaintiff did not allege that the defendant "knew that a given user was in [the forum] *before* it sent the code to that user's browser" to engage in the alleged data collection); *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 97 (1st Cir. 2024) (similar).  Nor do Plaintiffs explain why it matters that their IP addresses "can be used to determine the[ir] approximate physical location" *after* the challenged data collection occurred (FAC ¶ 61)—because it does not.  *Hasson*, 114 F.4th at 192 (no express aiming based on alleged "collection of users' geolocation data" revealing "Plaintiffs' location after the fact).

The Ninth Circuit's recent decision in *Briskin v. Shopify, Inc.*, which found specific jurisdiction over an out-of-state vendor (Shopify) that supplied a web-payment processing software to a California retailer, confirms that express aiming is lacking here.  135 F.4th 739, 746-48 (9th Cir. 2025).  The *Briskin* court found the express aiming requirement satisfied because "Shopify's allegedly tortious actions"—the collection of the plaintiff's data when he made a purchase on the retailer's website—"deliberately targeted [the plaintiff] in California."  *Id.* at 746.  Critically, the Ninth Circuit reached that result because Shopify "knew" that the plaintiff was in California "*before* it actually transact[ed] the payment process."  *Id.* at 756 & n.13 (emphasis added).  The absence of any allegation that BioLife "kn[e]w that [Plaintiffs'] device[s] w[ere] located in California" before the alleged collection of their email and IP addresses occurred distinguishes this case from *Briskin* and confirms that there is no express aiming.  *Id.* at 746; *cf. Hidalgo v. JPMorgan Chase Bank, N.A.*, 2025 WL 1370488, at *3-4 (S.D. Cal. May 12, 2025) (finding express aiming under *Briskin* where defendant "knowingly targeted Plaintiff—a California resident" after being "explicitly notified" of his location).

***No Suit-Relatedness.***  Plaintiffs also fail to plead facts establishing that their claims arise out of or relate to any of BioLife's alleged contacts with California.  This requires Plaintiffs to "allege[] the kind of injury that would 'tend to be caused' by" BioLife's California contacts.  *Briskin*, 135 F.4th at 760.  None

of the allegations in the FAC satisfy this requirement. The only California contact Plaintiffs allege is BioLife's "plasma donation centers in California" (FAC ¶ 14), but these alleged contacts are not "related to" Plaintiffs' claims because the operation of physical donation centers is not "the kind of contact that would tend to cause privacy injuries" on a website like those Plaintiffs allege. *Briskin*, 135 F.4th at 760; *see, e.g.*, *Hasson*, 114 F.4th at 193 (no relatedness in website wiretapping case based on defendant's alleged operation of "approximately 85 brick-and-mortar locations" in the forum).

**B.    The FAC Fails To State a Viable Claim.**

Plaintiffs' failure to state a claim under CIPA's wiretap (Cal. Penal Code § 631) and pen register (*id.* § 638.51) provisions independently warrants dismissal of the FAC.

**1.    Plaintiffs Consented to the Alleged Data Practices.**

"[U]nder California law, the plaintiff bringing a CIPA claim has the burden to prove that the defendant lacked consent to record." *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 n.1 (9th Cir. 2019); *see* Cal. Penal Code § 631(a) (prohibiting conduct that is "unauthorized," done "without the consent of all parties to the communication, or in any unauthorized manner"); Cal. Penal Code § 638.51(b)(5) (prohibiting conduct without "consent of the user"). As the California Supreme Court has explained, "no wrong is done to one who consents." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994); *see also* Cal. Civ. Code § 3515 ("A person who consents to an act is not wronged by it.").

Plaintiffs cannot state a claim under CIPA because they do not and cannot plead facts plausibly establishing lack of "prior consent." FAC ¶¶ 24, 126. Plaintiffs agreed to BioLife's alleged data collection practices *before* their email and IP addresses were purportedly collected when creating their BioLife accounts. Specifically, on the first account sign-up page, immediately above the "Next" button, Plaintiffs were presented with the following prominent disclosure: "By providing my contact information, I agree that the information I provided may be used in the donation process. For more information on how BioLife processes my personal information I can go to the BioLife <u>Privacy Notice</u>." *Id.* ¶ 41. The Privacy Notice was hyperlinked, permitting Plaintiffs to read and review more information about how BioLife processes their information before proceeding, and confirmed, "By using this Website and/or Application . . . you acknowledge that you have read and understood this Notice and you consent to the processing of your Information for the purposes as explained in this Privacy Notice." Szatkowski Decl. Ex. A at 3.

The Privacy Notice disclosed the precise data practices that Plaintiffs now challenge and to which they claim they did not consent: that BioLife collects information such as "Internet Protocol (IP) address" and "email," and that BioLife may use this information to "manage and improve the Website and Application" and share the information with "authorized service providers that perform certain services on [BioLife's] behalf, such as marketing." *Id.* at 1-2. That BioLife "use[s] th[is] information . . . for data analytics and marketing purposes" to facilitate plasma donations (FAC ¶ 2) was also disclosed on the account sign-up page itself, where Plaintiffs provided their email addresses and "agree[d] that the information I provided may be used in the donation process." *Id.* ¶ 41. It is immaterial that "Snapchat, Everage, [and] Salesforce" are not "referenced in Defendants' Privacy Policy" by name (*id.* ¶¶ 7, 9) because CIPA "does not require" such "a highly granular disclosure." *Lakes v. Ubisoft, Inc.*, --- F. Supp. 3d ----, 2025 WL 1036639, at *5-6, *8 (N.D. Cal. Apr. 2, 2025) (dismissing CIPA claim because disclosures that information may be provided to "partners" were sufficient to establish consent and did not require "a more granular disclosure" specifying the alleged partner, Meta, by name); *see Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) (similar).

By affirmatively clicking the "Next" button acknowledging their agreement to the account sign-up disclosure and hyperlinked Privacy Notice (FAC ¶¶ 6, 8, 42), Plaintiffs physically manifested their consent to BioLife's alleged data collection practices. Courts routinely hold that similar flows establish consent. *See, e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (plaintiff consented by "click[ing] a 'Sign In' button" where the "relevant warning language and hyperlink to the Terms of Use . . . were located directly below the sign-in button"); *Silver*, 2021 WL 3191752, at *4 (plaintiffs asserting wiretapping claims under CIPA consented by "clicking the 'Place Order' button—to acknowledge that they were agreeing to the terms of the privacy policy"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (plaintiff with "opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button" that "she admittedly clicked" was bound by said terms).

Furthermore, Plaintiffs consented *before* their email and IP addresses were allegedly collected. As the FAC acknowledges, the website tools do not allegedly "intercept the user's e-mail address . . . [and]

also acquire the user's IP address" until "a user clicks 'next.'" FAC ¶ 42. Accordingly, Plaintiffs cannot plead lack of prior consent because they consented to the collection of their email and IP addresses "immediately prior to the moment at which [BioLife] is alleged to have engaged in wrongful conduct." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212-13 (N.D. Cal. 2014) (dismissing wiretap claim because plaintiffs "consented to or authorized the collection of email addresses" *before* collection had occurred by clicking "Allow" button acknowledging disclosures); *cf.* FAC ¶ 24 (citing *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (reversing dismissal of CIPA claim where plaintiff consented to data collection *after* collection had already occurred)).

### 2. Plaintiffs Lack Statutory Standing.

Only a person "who has been injured by a violation of [CIPA] may bring an action against the person who committed the violation." Cal. Penal Code § 637.2(a). To bring a CIPA claim, a plaintiff must therefore "allege a concrete injury-in-fact." *Rodriguez v. Fountain9, Inc.*, 2024 WL 3886811, at *4 (Cal. Super. July 9, 2024). Plaintiffs lack statutory standing because they fail to allege any such concrete injury here. As the FAC acknowledges, the only data allegedly collected was Plaintiffs' "e-mail address and IP address" (FAC ¶¶ 6, 8), which was either "hashed" (email) or consisted of "a set of numbers assigned to a device on a network" (IP address) (*id.* ¶¶ 47, 52, 55, 58). This is not "personal information" giving rise to a concrete injury-in-fact because the data "in itself provides no information about the user." *Rodriguez v. Fountain9, Inc.*, 2024 WL 4905217, at *4 (Cal. Super. Nov. 21, 2024) (no CIPA statutory standing based on collection of IP address); *see I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) ("email address" not "private information"); *cf.* FAC ¶ 80 (citing *Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 935-36, 940 (N.D. Cal. 2023) (defendant itself collected "vast amounts of personal data," including "race, location, politics, and medical information")).

Plaintiffs' speculation about how "[h]ashed e-mails can be decrypted" (FAC ¶ 54), how "IP addresses can be used" (*id.* ¶ 61), and how both pieces of data "can" be used for so-called "ID Bridging" (*id.* ¶¶ 77-78) is beside the point. Plaintiffs do not allege that this data was *actually* decrypted or used in this way. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 839 (N.D. Cal. 2024) (disregarding as irrelevant allegations about how third-party website technology "could be used" that failed to specify how the technology was "*actually* us[ed]"). Nor would it matter if it was because Plaintiffs must show that they

were "injured by a violation of [CIPA]," Cal. Penal Code § 637.2(a), and the only purported CIPA violations are predicated on the alleged interception of the data itself (FAC ¶¶ 114-15, 122-24), not any subsequent uses of that data.

>          3.      **Plaintiffs Fail To Plead the Elements of Their Claims.**
>
>               a)      **The CIPA Section 631 "Wiretap" Claim Should Be Dismissed.**

Section 631 prohibits (1) "intentional wiretapping," and (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 191 n.1, 192 (1978); *see* Cal. Penal Code § 631(a).[5]  Plaintiffs do not—and cannot—pursue a claim under the first clause because "[t]he first clause of Section 631(a) concerns telephonic wiretapping specifically, which does not apply to the context of the internet." *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1065 n.8 (C.D. Cal. 2023) (collecting cases).  Plaintiffs instead pursue an aiding-and-abetting claim against BioLife under the theory that Salesforce and Snap violated the second clause (*see* FAC ¶¶ 114-116), which fails for multiple reasons discussed below.

*Plaintiffs' Communications Were Not Intercepted.*  Plaintiffs fail to plausibly allege that Salesforce or Snap committed a predicate interception under CIPA section 631's second clause.  Under that clause, Plaintiffs must plausibly allege that Salesforce or Snap themselves "reads, or attempts to read, or to learn the contents" of their communications—which they describe as their "e-mail address and IP address" (FAC ¶¶ 6, 8)—"while the same is in transit" to BioLife.  Cal. Penal Code § 631(a).  Plaintiffs fail to do so.

Plaintiffs' email and IP addresses are not "contents" in the first place.  "[C]ontents refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).  As the

---

[5] The only other actionable clause of the subdivision prohibits "attempt[s] to use or communicate information obtained as a result of" activities under the first two clauses. *Tavernetti*, 22 Cal. 3d at 192-93; *see* Cal. Penal Code § 631(a).  Plaintiffs do not assert a claim under this clause (*see* FAC ¶¶ 109-18), nor would it matter if they did because a claim brought under this clause must be predicated on a violation of the other clauses.  As explained in the text, Plaintiffs have failed to state such a predicate violation, so any derivative "use or communicate" claim would also fail. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134, 1137 (E.D. Cal. 2021) (dismissing claim under clause imposing derivative liability for use of unlawfully obtained information where there was no predicate violation).

Ninth Circuit has explained, "email and IP addresses constitute addressing information and do not necessarily reveal any more about the underlying contents of communication than do phone numbers," which are the prototypical example of record information.  *Id.* at 1108; *see Svenson v. Google Inc.*, 2015 WL 1503429, at *8 (N.D. Cal. Apr. 1, 2015) ("telephone number[s]" constitute "record information").  For these reasons, courts routinely hold that email and IP addresses are not actionable "contents."  *See, e.g.*, *Ramos v. Gap, Inc.*, 2024 WL 4351868, at *5 (N.D. Cal. Sept. 30, 2024) ("email address" and "IP address" are not "contents" under section 631); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) ("Plaintiff's IP address" not "contents"); *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *5 (S.D. Cal. July 18, 2024) ("email addresses" not "contents").

Nor do Plaintiffs plausibly allege that Salesforce or Snap "read or attempted to read" their email and IP addresses "in transit."  A plaintiff cannot satisfy this requirement with "vague allegations about how [the] data collection occurs 'in real time," *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017), as the FAC alleges here (FAC ¶¶ 82, 91, 94).  Moreover, Plaintiffs admit that their email addresses, in particular, were allegedly "hashed" while "in transit."  *Id.* ¶ 98; *see id.* ¶ 52 (alleging that Snap "receives the user's e-mail in Sha256 format"); *id.* ¶ 47 (alleging that Salesforce "acquires a user's e-mail address . . . in Base64 format").  Thus, Salesforce and Snap could not possibly have read or attempted to read Plaintiffs' email addresses while in transit, because their email addresses were "encrypted while in transit."  *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *7 (C.D. Cal. July 12, 2024) (no reading by Salesforce in transit where "messages sent . . . are encrypted while in transit"); *Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989, 993, 995 (N.D. Cal. 2024) (similar as to "hashed" data).

Plaintiffs' remaining allegation that "Snap necessarily reads" Plaintiffs' non-hashed email addresses "*before* they're sent to Snap" (FAC ¶¶ 97-98) "makes no logical sense."  *Moreno v. Medina*, 2013 WL 3350819, at *4 (E.D. Cal. July 3, 2013) (disregarding "unclear and illogical" allegations in granting motion to dismiss).  The webpage Plaintiffs quote (FAC ¶ 97) and that is accordingly incorporated by reference confirms that it is the Snapchat "Pixel" installed on a given website—and not Snap itself—that "will automatically attempt to detect and . . . hash information we believe to be

emails . . . before they're sent to Snap." Nelson Decl. Ex. A at 2. This particular method of hashing emails occurs "[w]hen the toggle is enabled" for the "Automated Matching" setting. *Id.* Thus, even if Plaintiffs had alleged that BioLife enabled this setting—and there is no allegation that it did—the BioLife website's Snapchat Pixel's hashing of email addresses "does not constitute 'reading' under CIPA" by Snap itself. *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025) (rejecting argument that a third party "reads" email addresses under CIPA based on hashing process during which the third-party website tool "detects email addresses . . . that require normalizing and hashing" prior to transmission to third party).

> ***BioLife Did Not Aid or Abet Any Alleged Interception.*** To state an aiding-and-abetting claim under CIPA section 631, a plaintiff must plausibly allege the defendant "kn[ew] the other's conduct constitutes a breach of duty"—in other words, that the conduct violated CIPA. *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024). Even if Plaintiffs had plausibly alleged that Salesforce and Snap engaged in a predicate interception under CIPA section 631 (and they do not), they do not plead that BioLife had knowledge of any such CIPA violation. "Absent factual allegations on that specific issue, Plaintiff[s] ha[ve] failed to state an aiding and abetting claim." *Id.* (dismissing aiding-and-abetting claim for failure to plead website operator's knowledge of website vendor's alleged "wiretapping and eavesdropping in violation of CIPA"); *see also Valenzuela v. Kroger Co.*, 2025 WL 851075, at *2 (C.D. Cal. Mar. 13, 2025) (dismissing aiding-and-abetting claim for failure to "include plausible allegations that explain how [website operator] either knew [vendor's] conduct constituted a breach of duty" or committed a breach itself).

> **b)** **The CIPA Section 638.51 "Pen Register" Claim Should Be Dismissed.**

Implicitly conceding that their claim under CIPA section 631 is legally untenable, Plaintiffs bring a claim under CIPA section 638.51 "in the alternative if the Court finds the information [allegedly] collected here by the Third Parties was not the 'contents' of any communication." FAC ¶ 121. Section 638.51 prohibits the "install[ation] or use [of] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). In this case, Plaintiffs contend that the Salesforce Evergage and Snapchat Pixel tools, as allegedly used by BioLife, constitute "pen registers." For multiple reasons, Plaintiffs' alternatively pleaded "pen register" claim fails as well.

*CIPA's Pen Register Provision Does Not Apply to Internet Communications.*  CIPA section 638.51 does not prohibit the alleged collection of internet communications at issue here.  The California Legislature enacted CIPA section 638.51 "in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register."  *Sanchez v. Cars.com, Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025).  As the FAC recognizes (FAC ¶ 29), a "pen register" has long been understood to mean "a mechanical device which records the numbers dialed from a telephone." *People v. Blair*, 25 Cal.3d 640, 654 n.11 (1979).  Consistent with this understanding, the California Legislature defined a "[p]en register" in the statute to mean "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication."  Cal. Penal Code § 638.50(b).

In accordance with "th[is] plain language and legislative intent," California courts have confirmed that CIPA's pen register provision prohibits the use of devices or processes "used to record or decode dialing, routing, addressing, or signaling information from telephone numbers, and not internet communications" like Plaintiffs allege here.  *Sanchez*, 2025 WL 487194, at *3 (dismissing CIPA pen register claim based on alleged "software used by a website to improve its user functionality and the effectiveness of its marketing"); *see also Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *2 (Cal. Super. Sept. 9, 2024) ("Section 638.50 does not address the privacy rights of Internet users."). Indeed, within the same statute, the California Legislature requires that an order authorizing the use of a pen register "shall specify"—without exception—"[t]he number and, if known, physical location of the telephone line to which the pen register . . . is to be attached."  Cal. Penal Code § 638.52(d)(3).  Plaintiffs' attempt to expand CIPA's pen register provision to internet communications would make that requirement a nullity and therefore "violate the rule that courts should give meaning to every word of a statute."  *People v. Franco*, 6 Cal. 5th 433, 437-38 (2018).

*The Salesforce Evergage and Snapchat Pixel Tools Are Not Pen Registers.*  Plaintiffs also fail to plausibly allege that the Salesforce Evergage and Snapchat Pixel tools are "pen registers" within the meaning of the statute.  A "pen register" captures "outgoing addressing information," *Aviles v. Liveramp,*

*Inc.*, 2025 WL 487196, at *2 (Cal. Super. Jan. 28, 2025), or put simply, "the numbers dialed from a telephone." *Blair*, 25 Cal.3d at 654 n.11. Thus, even if CIPA's pen register provision extended to website communications (and as explained above, it does not), "[t]he analog of the number dialed by telephone here is the IP address and related information of a website accessed by a computer—but not the computer's own IP address or identifying information." *Aviles*, 2025 WL 487196, at *2. Plaintiffs therefore cannot establish that the Salesforce Evergage and Snapchat Pixel tools are "pen registers," because they allege that these tools collected only *their* email and IP address, not the "IP address and related information" of the BioLife "website accessed." *Id.* (dismissing CIPA pen register claim based on website tool's alleged collection of plaintiff's email and IP address); *see also Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (Cal. Super. Sept. 24, 2024) (code that allegedly collected plaintiff's IP address was "not a pen register because it does not collect the destination information of communications from Plaintiff's computer").

**CIPA Does Not Impose Liability for the Collection of IP Addresses.** There is "no cause of action under [Section 638.51]" for the "collection of incoming IP addresses" because that is "what happens every time any user accesses any website." *Casillas*, 2024 WL 4873370, at *3, *5. "The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them." *Id.* at *4. Accordingly, Plaintiffs' claim independently fails to the extent premised on the alleged collection of their IP addresses, because "there is no privacy interest in IP addresses provided to a service provider or website." *Id.* at *6 (dismissing CIPA pen register claim for this reason); *see also Rodriguez v. Plivo Inc.*, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024) (same; "Plaintiff's IP address is not the type of information collected by pen registers"); *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (same; noting contrary result would "potentially disrupt a large swath of internet commerce").

### 4. Plaintiff Wooten's Claims Are Untimely.

"CIPA has a one-year statute of limitations." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023). The limitations period began to run for Plaintiff Wooten's claims "[i]n or around February 2023," when Plaintiff Wooten alleges that his email and IP address were collected while creating his account on the BioLife website. FAC ¶ 6; *see Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109 (1988) (general rule is that limitations period begins to run "on the date of injury"). Because Plaintiff Wooten

waited to bring this lawsuit for nearly a year after the limitations period expired in February 2024, his claims are time-barred. *See, e.g.*, *Javier*, 649 F. Supp. 3d at 901 (dismissing as time-barred a CIPA claim brought more than one year after alleged data collection); *Lau v. Gen Digit. Inc.*, 2023 WL 10553772, at *2-3 (N.D. Cal. Sept. 13, 2023) (same); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. 2020) (same).

In an apparent attempt to expand CIPA's limitations period, Plaintiff Wooten asserts that he "had no reason to suspect" the purported data collection and "could not have reasonably discovered the violation on his own." FAC ¶ 7. This cursory argument fails. A tolling doctrine, such as the discovery rule, "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005). Plaintiffs have inquiry notice when they have "information of circumstances to put [them] *on inquiry*" or "*the opportunity to obtain knowledge* from sources open to [their] investigation." *Id.* at 807-08. In this case, as demonstrated above, Plaintiff Wooten had inquiry notice, if not actual notice, of his claims when he consented to the Privacy Notice disclosing the alleged data collection practices on the first account sign-up page. *Supra* at 7-9. It makes no difference that Snap and Salesforce are not identified by name in the Privacy Notice, nor is it relevant that counsel purportedly had to conduct a "dynamic analysis" to discover the alleged use of the tools on the BioLife website. FAC ¶ 7. Plaintiff Wooten had more than a "reasonable opportunity" to discover the complained-of data practices via the Privacy Notice to which he consented, and nothing more is required to start the running of the statute of limitations. *See Bliss v. CoreCivic, Inc.*, 978 F.3d 1144, 1149 (9th Cir. 2020); *see also Maddalena v. Toole*, 2013 WL 5491869, at *5 (C.D. Cal. Oct. 1, 2013) (noting that "[a] victim of wiretapping does not need to discover every type and means of the defendant's misconduct" to trigger statute of limitations).

In fact, Plaintiff Wooten consented to the Privacy Notice a second time on the next account sign-up page by checking a box confirming that he "read and understand[s] BioLife's <u>Privacy Notice</u> that explains how BioLife handles my personal data that has been or will be collected, stored and used by

BioLife."  Nelson Decl. Ex. B at 3.[6]  Plaintiff Wooten's allegation that he "was never required to view, agree to, nor consent to any privacy policy at sign up" (FAC ¶ 7) is thus demonstrably incorrect.  Since "[t]he privacy policy to which he assented"—on two separate occasions—"tells him categorically" of the challenged data collection practices, Plaintiff Wooten cannot invoke any tolling doctrine because he was at least "on inquiry notice" of his CIPA claims at the time of his alleged injury.  *Javier v. Assurance IQ, LLC*, 2023 WL 3933070, at *3 (N.D. Cal. June 9, 2023) (dismissing CIPA claim as time-barred and rejecting application of tolling doctrine); *see also Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *9-10 (C.D. Cal. Feb. 27, 2025) (dismissing CIPA claim as time-barred where privacy policy put plaintiff on "inquiry notice" of challenged conduct).

## IV.    CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC for lack of personal jurisdiction or, alternatively, for failure to state a claim.  Dismissal with prejudice is warranted, as Plaintiffs have already amended once in response to BioLife's first motion to dismiss.  *See Dutra v. BFI Waste Mgmt. Sys. of N. America, Inc.*, 2015 WL 2251203, at *4 (N.D. Cal. May 13, 2015) (dismissing complaint with prejudice where "plaintiff has amended the complaint once with the benefit of defendant's pending motion to dismiss").

---

[6] This Court may consider the second page of the BioLife account sign-up process (*see* Nelson Decl. Ex. B) under the incorporation-by-reference doctrine.  *See Lakes*, --- F. Supp. 3d ----,  2025 WL 1036639, at *3 (considering "screens showing the account creation and purchase process . . . so the Court has a complete picture of the user's journey, what the user consents to, and the policies they are provided and agree to"); *see also supra* at 3 n.2.

DATED: June 6, 2025                COVINGTON & BURLING LLP

By: */s/ Cortlin H. Lannin*

CORTLIN H. LANNIN (SBN 266488)
clannin@cov.com
MATTHEW Q. VERDIN (SBN 306713)
mverdin@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091

HANNAH K. NELSON (SBN 347061)
hnelson@cov.com
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800

*Attorneys for Defendants BioLife Plasma Services L.P. and Takeda Pharmaceuticals U.S.A., Inc.*